UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
UNITED STATES OF AMERICA

                                                                 Ind. No.
-against-                                       11 Cr 486 (DLI)


FADIL SALAJ,

                                  Defendant.
-------------------------------------------------------------x


# SENTENCING MEMORANDUM


Jeffrey G. Pittell
MAHER & PITTELL, LLP
*Attorneys for Defendant*
299 East Shore Rd.
Great Neck, New York 11023
516- 829-2299

# INTRODUCTION

Based upon our calculation, Fadil Salaj's advisory sentencing guideline range is 0 to 6 months. Due to this factor, as well as other reasons set forth in this *Sentencing Memorandum*, we contend a sentence of probation is an appropriate disposition in this case.

# MR. SALAJ'S PERSONAL BACKGROUND

## Mr. Salaj's Childhood, Adolescence and Young Adulthood

Fadil Salaj was born and grew up in *Ulcinj*, a small town (population approximately 10,000) in what is currently the country of Montenegro. Ulcinj is a seaport town on the Adriatic Coast. Its history dates back several centuries B.C.

Mr. Salaj's family has resided in Ulcinj for many generations. They own a self-sustaining farm (currently maintained by one of Mr. Salaj's brothers) which raises various crops and livestock.

Although Ulcinj is in Montenegro, most of its residents, including Mr. Salaj's family are Albanians. Historically, the precise origin of Albanian culture and language is unknown. However, it is believed to have developed during the period when Ancient Greeks lived in the Adriatic region including Ulcinj. Throughout recorded history, regardless of the occupying power, Ulcinj, and its residents, have always been considered themselves to be Albanians.

In more recent times, from approximately the 1570's to the 1870's, Ulcinj was controlled by the Ottoman Empire. Over time, most of its inhabitants converted (albeit sometimes forcibly) to Islam. Today, almost all its residents, including Mr. Salaj's family, are Albanian Muslims.

The Ottoman governance over Ulcinj ended during the 1870's. During this period, many Balkan principalities revolted against Turkish rule. Eventually, when hostilities ended, some Balkan nations, including Serbia and Montenegro, gained independence from the Turks. When the borders were drawn up, Montenegro acquired some of the Albanian areas including Ulcinj.

The dominant religion of Montenegro is Serbian Orthodox. As such, when Ulcinj fell under Montenegro's rule, its Albanian Muslim citizens became a minority. In 1918, after World War I ended, the area was again re-mapped. During this process, Montenegro, Serbia, and other Balkan states, combined to form Yugoslavia. Politically, Yugoslavia -- until it broke apart during the 1990's -- was primarily controlled by a Serbian Government. As such, under Yugoslavian rule, the Albanian Muslims of Ulcinj continued to be a minority.

Mr. Salaj was born in 1960 and grew up in Yugoslavia under Serbian hegemony. In the 1990's, during the civil wars in Bosnia and Kosovo, the Serbian anti-Muslim atrocities became internationally publicized. However, before these

wars, while living in Yugoslavia, Mr. Salaj experienced constant discrimination perpetrated by Serbians upon ethnic Albanians.  For example, he recalls laws which, upon threat of incarceration, prohibited the speaking of the Albanian language and display of Albanian flags.  In addition, Albanians were openly denied employment and access to professional opportunities.  Mr. Salaj attended a university in Kosovo.  He graduated with a bachelor's degree in Accounting.  However, he was unable to get a job due to anti-Albanian sentiment.  Ultimately, during 1983, when he was 23 years old, he concluded he would never have a viable career if he continued to live in Yugoslavia.  As such, he decided to immigrate to the United States.

Initially, when Mr. Salaj left Montenegro, he traveled to Italy.  He worked there for approximately one year while awaiting a U.S. visa.  However, he could not get a visa and returned to Montenegro.  Upon his return, during the Spring of 1984, he was arrested and imprisoned for being a political dissent (due to his attempt to emigrate from the country).  After he was released, Mr. Salaj returned home and stayed with his family.  However, he saw the proverbial "writing on the wall."  He realized -- unless he was willing to live out his life on the family farm -- he would have to leave Montenegro forever.  During the Summer of 1984, while he was still staying with his family in Ulcinj, Mr. Salaj met his future wife, Julia Palevic.  Ms. Palevic is also Albanian.  Her family had immigrated to the United States during the early 1970's and

lived in the Detroit area. During that Summer, when she met Mr. Salaj, she was in Montenegro visiting relatives. Over the course of the Summer, they became friendly and dated. When she returned to Michigan, they kept in touch with each other.

The following year, in early 1985, Mr. Salaj left Montenegro and immigrated to the United States. He decided to live in Detroit in order to continue his relationship with Mr. Palevic. Later that year, they were married.

After his arrival in the United States, Mr. Salaj worked a variety of jobs including: dishwasher in a Greek restaurant (6 months); delivery driver for *Domino's Pizza* (1 year) and a painter (3 years). Thereafter, for the next eight years, he worked as a cook in a diner owned by his father-in-law. Mr. Salaj reports her parents were domineering and opinionated about how he and Ms. Palevic should live their lives and the raise their children. Looking back on this period, both Mr. Salaj and Ms. Palevic have come to realize Mr. Salaj's daily interaction with her parents (by working in their restaurant) put a strain upon their marriage. Ultimately, this tension broke apart their marriage. However, even though they divorced, Mr. Salaj always continued to care for, and financially support, Ms. Palevic and their children (who were ages 2,6 and 7 during the divorce). Ms. Palevic has written a letter on behalf of Mr. Salaj. Among other information, she details how Mr. Salaj has always striven to play a vital role in all of their lives. A full copy of her letter is as follows:

4

Dear Your Honor,

My name is Julia Palevic and I am writing to you in regards to Fadil Salaj. Fadil is my ex-husband, but he is also the father of our three kids. I am writing to express how losing Fadil would affect our family tremendously. Fadil and I have been divorced for many years now but he has never turned his back on the family. He has always been a part of the children's lives both emotionally and financially.

Working as a part-time waitress does not bring in enough income to support my family. Between house costs, food and everything essentials I would never be able to cover the costs. Fadil has been paying off my family's mortgage and has offered financial support whenever needed. He has taken care of clothing and school costs and has even supported their extracurricular activities. His income is very important for the survival of our family. We need to have him in our lives for the simple fact that we need him to help us live comfortably. Without his support my family could lose our home. Along with the financial support he provides he is also emotionally connected to the family.

While living out of state Fadil has still managed to visit the children. He has come to support them during sporting events, graduations and birthdays. He never misses a time that the children really need him for. He is there for guidance; he makes sure that he still finds a connection with the kids, even as they grow older. He is always the "understanding" parent in the situation. He makes sure that I stay level headed to understand what our kids need and where they are coming from. If he were to be out of reach for a long period of time it would be an emotional struggle for our kids. With events like birthdays or our son's graduation in the upcoming spring our kids would be crushed not to have him there for support.

With regard to all of explained in this letter I hope you can understand the need we have for Fadil in our lives. My family needs the support. I am not capable of taking care of this family alone. I have no immediate family that could help me with my struggles, he has always been the first person I go to and without him I do not want to think about the circumstances we might end up in. My children need their father. They need him there for important life changes. We have worked hard to make sure the kids do not lose the connection to both of us. If he is out of reach it could cause great devastations to the kids and their future outlooks. With great hope and need I ask of you to give him the minimal consequences so Fadil can still be a part of my children's lives.


Sincerely,

Julia Palevic

Due to the divorce, Mr. Salaj could no longer continue to working in his father-in-law's restaurant. As such, for the next few years, he worked in other restaurants in the Detroit area.

During 2001, Mr. Salaj's other brother (who lives in New York) told him that, if he moved to New York, he would get him a job which paid more money than his current wages. Relying upon his brother's representation, Mr. Salaj moved to New York. However, after he arrived here, the promised job never materialized. Nonetheless, Mr. Salaj stayed in New York and, for one and a half years, worked as a limousine driver.

During 2003, a friend told Mr. Salaj that, if he enjoyed working as a limo driver, he could earn more money as a commercial truck driver. The friend informed him about a job, driving for a trucking company, located in Chicago. Mr. Salaj contacted the company and was offered a job. He relished this opportunity because, in addition to enabling him to earn more money, it allowed him to live in closer proximity to his children (who lived in Detroit with Ms. Palevic).

After working as a truck driver for approximately six months, Mr. Salaj immensely enjoyed the work. As such, during November 2003, he bought his own rig and became an independent owner-operator.



Photographs of Mr. Salaj and his Rig



For the past ten years, Mr. Salaj has worked hard at his trucking business. He has developed a regular route where he transports automobiles between Greater Chicago and Metropolitan New York City. Typically, his work routine involves spending few days in Chicago consolidating a load of cars (which he obtains by accepting transit bids offered by transportation brokers) for delivery to New York. Once he has accepted enough bids, with enough cars to load up his tractor trailer, he drives the load to New York. The drive typically takes 15 to 20 hours. As such, during each trip, Mr. Salaj spends one night 'on the road' sleeping in the cab of his rig at a truck stop. After the load of cars are dropped off in New York, Mr. Salaj stays in New York (usually with his brother) for a few days. During this period, he consolidates a load of cars for delivery on the return trip to Chicago. After he drops off the load in Chicago, Mr. Salaj sometimes take a few days off to rest, visit his children and socialize with friends. Thereafter, the process starts anew with the consolidation of another load for delivery to New York.









Based upon Criminal History Category I, Mr. Salaj's advisory guideline sentencing range is 0 to 6 months (Zone A).

In prior letters to the Probation Department (with copies submitted to the Court) we contended Mr. Salaj is entitled to additional guideline reductions ▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

We expect the Probation Department will issue an Addendum which will address these issues. Accordingly, we defer our discussion until receipt of the Addendum.

## REQUESTED SENTENCE

We contend a sentence of Probation is an appropriate disposition in the matter at bar. This disposition is appropriate for the following reasons:

*First*, under 18 U.S.C. §3553(a)(1), prior to imposition of a sentence, a court shall consider the "history and characteristics of the defendant." Accordingly, we respectfully request the Court consider Mr. Salaj's personal background information contained in this *Sentencing Memorandum*.

*Second,* in consideration of 18 U.S.C. §3553(a)(2)(D), in light of Mr. Salaj's long employment history -- which includes working as an owner/operator of a trucking company for the past ten years -- there is no apparent need for imposition of incarceration to provide him with educational or vocational training.

*Third*, in consideration of 18 U.S.C. §3553(a)(4), we submit the requested sentence adequately takes the sentencing guidelines into consideration. As indicated above, based upon our calculation, Mr. Salaj's sentencing guideline range is 0 to months. As such, a sentence of probation is within this range.

*Fourth*, in consideration of 18 U.S.C.§3553(a)(6), the requested sentence will not result in an unfair sentence disparity between Mr. Salaj and other defendants with similar conduct and similar records. As noted above, the requested sentence is withing the advisory guideline range.

***Fifth***, in consideration of 18 U.S.C. §3553(a)(2)(B), the requested sentence provides an adequate deterrence to potential future criminal conduct. Mr. Salaj is 53 years old. He does not have a criminal history and has worked hard his entire adult life. During the pendency of this case, he has been under pre-trial supervision without incident. We submit the stigma of a felony conviction, coupled with being under supervision by a probation officer, will sufficiently deter any possibility of recidivism.

***Sixth***, as noted above, and in the PSR, Mr. Salaj's role in the was limited to a single delivery of marijuana.

***Seventh***, also, in consideration of 18 U.S.C. §3553(a)(1), we contend Mr. Salaj's actions clearly represent a marked deviation from an exemplary and otherwise law-abiding life. By way of comparison, prior to *Booker* and its progeny, sentencing downward departures were permitted in instances where the conduct at issue was "aberrant behavior" constituting a short lived departure from an otherwise law abiding life. *See e.g. U.S. v. Ritchey*, 949 F.2d 61 (2nd Cir 1991) (remanding for consideration of downward departure upon several grounds including aberrant behavior); *U.S. v. Altman,* 48 F.3d 96 (2d Cir 1995) (denying departure but recognizing aberrant behavior can be a basis for departure in certain circumstances)*; U.S. v. Cary*, 895 F.2d 318 (7th Cir 1990); *U.S. v. Grandmansion*, 77 F.3d 555 (1st Cir 1996).

13

"Aberrant behavior"has been broadly defined. In *Cary*, the Seventh Circuit defined it as behavior that "generally contemplates a spontaneous and seemingly thoughtless act." While, in *Grandmansion*, the First Circuit indicated it can include "multiple acts leading up to the commission of a crime." In both cases, one key determinant was the offense represented an isolated instance of wrongdoing.

In the matter at bar, Mr. Salaj's conduct falls within the parameters of the definition of aberrant behavior. His offense conduct involved a single act (the transportation of marijuana). Further, it occurred only during a brief period of time and was limited in scope.

***Eighth,*** in consideration of 18 U.S.C. §3553(a)(2)(A), we submit the requested sentence, coupled with the collateral consequences of a felony conviction ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ adequately reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense.

***Ninth,*** other than a conviction for DWI (occurring ten years ago), Mr. Salaj does not have a prior criminal history. He does not have a history of violence and the offense conduct, in the matter at bar, did not involve in a crime of violence.

## CONCLUSION

In light of the all foregoing factors, we respectfully submit a sentence of probation served is an appropriate disposition in this case.

Dated:     October 29, 2013
           Great Neck, NY

                                          Respectfully submitted,
                                          /s/
                                          Jeffrey G. Pittell

TO:   Gina Parlovecchio, AUSA
      Fadil Salaj